**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **VS.** | : | **CR No. 08-cr-16S** |
| | : | |
| **ANTHONY MANCINI** | : | |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SENTENCE CONSIDERATION**

## I. INTRODUCTION

Anthony Mancini respectfully submits this memorandum to assist the Court in determining a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing. 18 U.S.C. § 3553(a)(2005). Additionally, Mr. Murray submits this memorandum in support of his Motion for Sentencing Consideration advocating for a sentence outside the suggested guideline range.

## II. PROCEDURAL BACKGROUND

On December 7, 2007, a criminal complaint was filed in the United States District Court for the District of Rhode Island, charging the defendant with, while being a licensed dealer of firearms, willfully selling firearms without noting in the records required to be kept by law, the name,

age and place of residence of the purchaser of the firearms, in violation of 18 U.S.C. § 922 (b) (5) and 924 (a)(1)(D).

On that same date, the defendant was arrested by members of the Bureau of Alcohol, Tobacco and Firearms. He appeared before Magistrate Judge David L. Martin and was released on $10,000.00 unsecured bond with specific conditions. On February 29, 2008, the defendant again appeared before Magistrate Judge Martin and was arraigned on two counts of Willful Sale of Firearms by a Licensee Without Proper Record Keeping, in violation of Title 18, U.S.C. §§ 922(b)(5) and 924(a)(1)(D). The defendant signed a Waiver of Indictment, entered a plea of not guilty, and was released on the previously set bond and conditions.

On March 11, 2008, the defendant appeared before United States District Judge William E. Smith, and plead guilty to the two-count Criminal Information. Sentencing is scheduled for September 5, 2008.

## III. SENTENCING CONSIDERATIONS

### A. General

In determining the appropriate sentence for a criminal defendant, the Court is bound to consider the sentencing

factors set forth in 18 U.S.C. § 3553(a). The statute requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the need to avoid unwarranted sentencing disparity, the need to provide restitution, and the suggested guideline range. 18 U.S.C. § 3553(a)(1), (a)(3)-(7). The primary sentencing mandate of § 3553(a) directs the sentencing court to impose the minimally-sufficient sentence to achieve the statutory purpose of punishment – justice, deterrence, incapacitation, and rehabilitation: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2).]" 18 U.S.C. § 3553(a) (emphasis added).[1] This provision, the so called "parsimony provision", is the umbrella under which all other sentencing factors and considerations fall. It represents the ultimate goal of sentencing and reflects the maximum sentence that a court may impose. *United States v. Denardi*, 892 F.2d 269, 276-77 (3rd Cir. 1989) (Becker, J.,

[1] The statute provides, in pertinent part, that
"the court consider the need for the sentence imposed-
(A) to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"
18 U.S.C. § 3553(a)(2) (2005).

concurring in part, dissenting in part).

The United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005) rendered the Federal Sentencing Guidelines advisory rather than mandatory. Instead of being bound by the Sentencing Guidelines, *Booker* now "requires a court to consider Guideline ranges, . . . but permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." *Id.* at 245-46. Although no longer mandatory, the Federal Sentencing Guidelines are still a factor that the court must consider in making the ultimate determination of the appropriate sentence to impose in any criminal case.

The post *Booker* sentencing process mandated by the First Circuit requires the District Court Judge to first consult the guidelines – calculate the appropriate range and then decide whether or not to exercise discretion and sentence outside of the guideline range, *United States v. Jimenez*, 440 F.3d 514, 518-519 (1st Cir. 2006); *United States v. Thurston*, 456 F.3d 211, 215 (1st Cir. 2006).

**B. Personal Background**

The Presentence Investigation Report, Part C. Offender Characteristics, provides a comprehensive and accurate history of Mr. Mancini's background, including family

relations, education, employment, and criminal history. The undersigned defers to that report as it relates to this information, and supplements the same below.

As set forth in the Presentence Investigation Report, Mr. Mancini is a well respected and loved member of his family, friends and community. Attached to this memorandum is a plethora of letters of support submitted on behalf of Mr. Mancini by friends and relatives. As evident in the excerpts below, these letters, without exception, reveal an extraordinary level of support, respect and affection for a man that has dedicated his life to his family, friends and community, has suffered severe health problems, and has suffered extreme personal tragedy. For example;

> Carol Mancini, the defendant's wife writes, "Anthony has been through a great deal in his lifetime. Bypass surgery, with many unforeseen complications, a pace maker, one stroke, an eye stroke, skin cancer and the most important in the death of his son Keith in the Station Fire." . . . Some years ago Anthony went to work for his cousin's business, a landfill, so that he could keep his sons working at the store. What father or business man would do a thing like that . . . not many. If that wasn't enough, he took a job as a security guard . . . to supplement the income of the store.

> Laurette Joslyn, the defendant's cousin writes, "Anthony's present circumstances are the direct result of a most unfortunate lapse in judgment during one of the lowest ebbs in his lifetime. The embarrassment he has been enduring from these errors has weighed heavily upon him and his family and I am sure he deeply regrets these most

unfortunate lapses. . . I know Anthony to be a reliable, kind, most considerate and charitable individual who has helped numbers of people throughout his lifetime. Anthony has demonstrated exemplary dedication and responsibility to his family with endless support to his mom, who was widowed at a very early age, often acting as a surrogate father to his young siblings. He did this voluntarily with nary a whisper of complaint."

Mary Lori Page writes, "He is an honest, kind and honorable man."

June Giannini writes, "He is an honest man . . . a man who has survived extreme trial and tribulations over these hard times . . . He has sponsored many youth organizations . . . a kind, giving man."

Detective Robert E. Miele, Providence Police Department, who has known the defendant for over thirty years writes, "In the past few years Mr. Mancini has had more than his share of turmoil in his personal and professional life, including the passing of his youngest son Keith in the tragic fire at the station night club. This event in my opinion may have had a tremendous effect upon Mr. Mancini's judgment. . . . I have known and conducted business with Mr. Mancini for well over thirty years and during that time I have never observed Mr. Mancini ever break the law or condone this type of behavior."

Gail Ann Pomfrete writes, "Anthony Mancini is one of the most decent and honest men I have ever had the pleasure of having in my life. He is a fair man with a kind heart . . . On February 19, 1985 he became my second father seeing me through some of the toughest times of my life. He has never let me down and has never wavered, helping me raise and direct my sons through life by modeling great traits such as honestly, respect, dignity, pride, and integrity . . . he has sponsored numerous team sports, various activities, and organized annual fishing contests at a local lake for all the children in the neighborhood. No

child was ever left out. He supplied every child with bait and poles. . . Anthony Mancini has worked hard every day of his life . . . He is seventy-two, he has overcome heart problems with surgery, robbery, the loss of his partner, who was his brother, and most importantly the loss of his son who perished in the Station Fire. . . . I can't think of anyone else who has given more of themselves to everyone as he has. . . From his example, I have learned to be honest and have learned to stand up for what I believe in. I believe in him."

Christine Wright writes, "He is always there to lend a hand when needed. He is honest, kind and admirable person."

Janet Mancini writes, "Don't judge Anthony on his one mistake. He truly is a good person."

Richard Mancini writes, "I have known Tony for over 50 years and know him to be of good moral character, honest and trustworthy. A good father and husband. A hard worker and a gentleman. . . . I know that Tony is sorry for his mistake and I implore you to be lenient on Tony and look at all the good he has done over his lifetime."

Shirley A. Dowswell writes, "Mr. Mancini has proven to be a compassionate, caring person with a high moral standing in his everyday life. I know that if a situation should ever arise requiring assistance in any form, Anthony would be the first to volunteer his help and go beyond any expectations"

Lucy Ciccrelli, the defendant's sister, writes, "My brother, Anthony Mancini, has always been an honest, hardworking person, and he ran his business the same way. He has always been there for all his family, whether it was due to a death or a sickness, even though he has serious health problems of his own."

Claire Mancini, the defendant's sister-in-law, writes, "Anthony Mancini is honest, decent and

trustworthy. . . He is a quiet man, full of heart who cares about others and is ready with a helping hand when necessary. . . Anthony is a good man, please take this into consideration as you decide his fate."

Paul C. Ciccarelli, the defendant's nephew, writes, "As a young man, my uncle served his country by joining the army and is a veteran of the Korean war era. He is a devoted husband, father and grandfather. I have come to depend on him to provide support and comfort to my mother, his sister Lucy Ciccarelli, as my job keeps me away from Rhode Island. He is a man I have admired and looked up to from an early age and the admiration continues today."

Anne Hunter, the defendant's sister writes, "This letter is in reference to Anthony Mancini, whom I have known all my life. In fact, he has been a positive role model and influence throughout my life. Anthony is a very quiet and peace loving man. He has helped me through a divorce from a physically and mentally abusive man, standing at my side through out the court proceedings and counseling me to stay calm and patient; that all would work out for the best. During that same time, he brought bags of groceries to my home every week to ensure that I and my young children would have food on our table. . . . He is a man of integrity and is well respected by family, friends and members of the community. . . Please consider all the facts of this case and the character of a man, whose livelihood and well being have already been negatively impacted."

Cecelia Cairone, the defendant's sister-in-law, writes, "As my brother-in-law and friend I can contest that he is an honest, loving, generous and reliable man. He is the type of man that would take his shirt off his back to help someone in need. He is a great husband, father and professional business owner. To have this type of stress at his age of 72 is unbearable. He has had many tragedies in his life. The most recent the loss of his son in the Station Fire. I ask

to Court to please be lenient with the decision that is being made."

Norman Couturier writes, "At all times I have found Anthony to be honest and straightforward. Everyone who knows him, admires his quiet unassuming character, but knows that Anthony would always be there for anyone who required help. I can not think of any individual more deserving of your compassion and understanding."

Denise Ferris, the defendant's niece writes, "I've known Anthony all my life, as he is my father's brother. . . . He is known, as well as liked in the community and is dedicated to his family, friends and career. . . . despite the tragedies and illnesses my uncle has endured in his lifetime, he has managed to maintain his sense of pride and dignity. No matter what his circumstances, he has always made himself available to anyone who needs him."

Maria Pimental, the defendant's niece-in-law, writes, "I have known Anthony Mancini for over 15 years. I am his niece through marriage. I can confirm that he is a man of great integrity and is extremely dedicated to his family and work. He has been there for me, as well as my siblings, especially when my father passed away. He has always been generous and willing to help out."

John Parrillo, a childhood friend of the defendant's son Keith, writes, "This man is dedicated to my mother, his children, stepchildren, family and his business and would never hurt anyone. He has been through a great deal in the past few years, he has had by-pass surgery with complications, a pacemaker, two strokes, and hearing loss. Besides the loss of his youngest son to the Station Fire. One would think that would be enough for one lifetime and yet he asks for nothing and complains about nothing. He always comes second. . . . There is no one that knows him that doesn't have respect for the man."

> Vincent Mancini, the defendant's nephew, writes, "My uncle is a loving and caring father and has instilled the importance of respect and valuing family. I will always see my uncle as a figure of knowledge, support and fortitude. He has shown the importance of hard work and dedication in order to achieve the best for oneself and others. His son Keith perished in the Station Club fire. He was working that night and was at the exit when he turned around to assist others. The unselfishness of putting himself in peril is the direct result of how his dad raised him. I take pride in values and morals that I live by and will continue to aspire to live by the examples my uncle has set before me."
>
> Joanne Parillo writes, "My daughter Jamie said it best when she said, 'Grandpa Anthony is nice and very caring to people.'"

**C. DISCUSSION**

In the Presentence Investigation Report, the Office of the Probation Officer determined that the Total Offense Level for the instant matter as a Level 12, and that the defendant has zero criminal history points, which is a Criminal History Category of I, resulting in a guideline range of 10-16 months. According to § 5C1.1(d), this range falls within Zone C of the sentencing table, which sets forth that a minimum term may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that

at least one half of the minimum term is satisfied by imprisonment. The defendant, however, as set forth below, hereby moves for a downward departure or in the alternative a sentence variance, such that the court shall have the discretion to sentence the defendant to some form of punishment other than incarceration.

a. Downward Departure

The Federal Sentencing Guidelines §5K2.20 (Aberrant Behavior) provides for a downward departure based on a showing that the conduct for which the defendant engaged constitutes aberrant behavior, which is inconsistent with his character. Specifically, §5K2.20 provides in pertinent part as follows:

> (a) IN GENERAL . . . a downward departure may be warranted in an exceptional case if (1) the defendant's criminal conduct meets the requirements of subsection (b); and (2) the departure is not prohibited under subsection (c)[2].
>
> (b) REQUIREMENTS. — The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life.

**i. "Exceptional Case"**

[2] There is no indication in this case that any of the factors set forth in subsection (c) are applicable.

The circuit courts do not clearly set forth a criteria for determining whether a case is considered an "exceptional case" pursuant to §5K2.20. The defendant asserts, however, that the facts and circumstances surrounding the instant case warrant a finding that it is an exceptional case. By all accounts, the defendant is an exceptional person. The plethora of accolades contained in the attached letters evidence a life of selflessness, sacrifice and tragedy. Through honorable wartime military service and selfless support for immediate and extended family and friends, the defendant has established himself as an exceptional person. Moreover, in light of his many serious health problems and personal tragedy, such as the recent loss of his son in the Station Fire, the defendant comes before this court as a person that has suffered exceptional tragedy. It is an exceptional case for a defendant to come before the court at the age of seventy-two without ever having faced a criminal charge, and after operating a business for thirty-five years without ever facing any type of sanction or violation.

Accordingly, the instant case clearly falls within the classification of an "exceptional case" pursuant to §5K2.20.

**ii. Subsection b(1) – "was committed without significant planning"**

There is no indication that the defendant engaged in any planning whatsoever, with respect to the conduct that gave rise to the instant charges. The charges against the defendant were borne solely as a result of a sting operation by the Bureau of Alcohol, Tobacco and Firearms. There exists no evidence that the defendant took any affirmative action or planned the commission of any crime. He was solicited by federal authorities acting in an undercover capacity and merely acquiesced to the request of undercover members of law enforcement.

Accordingly, subsection b(1) is satisfied.

**iii. Subsection b(2) – "was of limited duration"**

The alleged conduct occurred over the course of two dates. The defendant's admitted conduct was the sale of three of firearms to ATF Agent Borysevicz on two dates, to wit, November 9, 2007 and December 5, 2007. This time frame is clearly of limited duration.

Accordingly, subsection b(2) is satisfied.

**iv. Subsection b(3) – "deviation by the defendant from an otherwise law-abiding life"**

It is undisputed that prior to the instant case the defendant had never been arrested, charged or convicted of

a criminal offense. He has held a federal license to sell firearms for thirty-five years, has operated Continental Firearms for the same period of time, and has never had any issues with respect to either his license or the operation of his business. Additionally, as is evident from the many letters in support, he is a dedicated family man, loyal friend, and respected member of the community. He is an honorably discharged veteran of the United States Army, where he attained the rank of sergeant, and served eighteen months in the Korea War. He has raised a loving family, is a beloved grandfather and uncle, and appears to be the patriarch of his family. The above referenced letters of support repeat the common theme of his dedication to family, friends and community. His friends and family, without exception, extol his virtues as a person of integrity and generosity. He is repeatedly described as a person that "would give you the shirt off his back". He has been supportive of family members during difficult times, such as his sister's divorce from an abusive husband, wherein in addition to moral support, he provided groceries to ensure that his sister's family "had food on the table". This was in the context of a life within which he did not earn much money, and held numerous jobs in addition to running Continental Arms to support his own

family, but still managed to help other family members in need.

As is evident from the attached letters of support, with the exception of the instant matter, the defendant has led an exemplary law-abiding life. Clearly satisfying the requirements Subsection b(3).

As set forth above, this matter clear satisfies the requirements of §5K2.20. Accordingly, the defendant respectfully requests that this Honorable Court make a finding that the defendant's acts constitute Aberrant Behavior pursuant to §5K2.20, and grant a downward departure of six (6) offense levels, resulting in a guideline offense level of six (6). This degree of departure will allow the court to sentence the defendant to a term of probation, community confinement or home detention.

b. Variance Sentence

In the alternative, the defendant respectfully requests that the Court impose a non-guideline sentence, in consideration of the factors set forth in 18 U.S.C. § 3553. In *United States v. Hillyer*, 457 F.3d 347 (4th Cir. 2006), the court stated as follows:

> We have previously outlined the steps a district court must take in arriving at a sentence after

> *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005):
>
> First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. Next, the court must determine whether a sentence within that range serves the factors set forth in [18 U.S.C.] § 3553(a) and, if not, select a sentence within statutory limits that does serve those factors. In doing so, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law. . . . If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence"). The district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range. *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir.2006) (alterations, internal quotation marks, and citations omitted).

Title 18, Chapter 227, § 3553 (a) sets forth the factors to be considered in imposing sentences as follows, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider, the following:

(1) **the nature and circumstances of the offense and the history and characteristics of the defendant.**

With respect to the nature and circumstances of the offense, the instant matter involves a sting operation,

wherein members of law enforcement initiated the conduct in which the defendant engaged, which resulted in his instant conviction of a Class D felony. The defendant did not deal directly with any member of the public, no member of the public illegally took possession of any firearms or ammunition as a result of the defendant's conduct, and no firearms or ammunition entered the stream of commerce without proper documentation.

With respect to the characteristics of the defendant, as set forth above, but for the instant conduct, the defendant has led an exemplary, selfless, and law-abiding life.

**(2) the need for sentence imposed –**

**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense:**
**(B) to afford adequate deterrence to criminal conduct;**
**(C) to protect the public from further crimes of the defendant; and**
(D) **to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

The defendant recognizes the seriousness of the offense by virtue of the fact that at the age of seventy-two, as a result of his conducted, he will for the rest of his life be a convicted felon. He has been a law-abiding citizen for seventy-two years, and as set forth above, the

instant conduct was an aberration within an otherwise law-abiding life. Considering the course of the instant matter that has resulted in the defendant being arrested, charged and convicted of a felony, and facing sentencing, in light of the evidence of his character, there is no reason to believe that he would ever again show a lack of respect for the law. With respect to adequate punishment, as a result of his conviction, the defendant can never possess a firearm or ammunition again. Accordingly, he has lost his license to be a firearm dealer and had lost the ability to engage in the type of business in which he has been engaged for most of his adult life. He has had to face the embarrassment of a very public arrest, with dozens of ATF agents storming his store. He has had to transfer his firearm and ammunition inventory to other firearms dealers for sale, undoubtedly resulting in the disclosure to his colleagues of his legal problems, not to mention that fact that his arrest was published in the Providence Journal.

Accordingly, there exists definite deterrence as to the defendant ensuring his future compliance with the law. Additionally, the public nature of the disclosure of his arrest and conviction, and resulting lifetime loss of his vocation, will certainly act as a deterrent for any other firearm dealer in the community.

With respect to the commission of future crimes by the defendant, prior to the instant case the defendant had never been arrest, charged, or convicted of a crime. Considering all that he has lost and suffered as a result of this case, there is no reason to believe he would ever again engage in criminal conduct. Moreover, with respect to the instant case, as a result of his conviction the defendant will never again be able to be a firearms dealer, or even possess a firearm or ammunition. Therefore, notwithstanding the fact that the defendant has suffered as a result of this case, there is virtually no occasion for him to ever engage in similar conduct in the future.

With respect to the need for educational or vocational training, medical care, or other correctional treatment, these factors simply do not apply to this defendant. At the age of seventy-two, the defendant is a recipient of social security, he still has the bait and tackle aspect of his business to run, and therefore is in no need for educational or vocational training. With respect to medical care, as set forth herein, the defendant suffers from numerous medical conditions, i.e., cardiac disease, high blood pressure, etc., for which he takes daily medication and seeks regular medical attention. Any form

of incarceration would only serve to complicate his very fragile medical conditions.

Accordingly, in consideration of the factors set forth in 18 U.S.C. § 3553, the defendant respectfully requests that this Honorable Court impose a sentence in variance of the guideline level of twelve (12), as set forth in the Presentence Investigation Report.

**CONCLUSION**

As set forth above, the defendant respectfully requests that this Honorable Court depart from the sentencing guideline level of twelve (12), as set forth in the Presentence Investigation Report. Specifically, the defendant requests that this Court depart downward, pursuant to §5K2.20 on the grounds of aberrant behavior, by six (6) offense levels to a guideline level of six (6), and impose a sentence of less than incarceration.

In the alternative, the defendant requests that this Honorable Court impose a sentence pursuant to 18 U.S.C. § 3553, deviate from the sentencing level of 12 as set forth in the Presentence Investigation Report. Specifically, for the reasons set forth herein, the defendant respectfully requests that this Honorable Court impose a sentence of less than incarceration.

ANTHONY MANCINI
By his attorney,

/s/ Albert E. Medici, Jr., Esq.
MEDICI & SCIACCA, P.C.
1312 Atwood Avenue
Johnston, Rhode Island 02919
Telephone 401-946-3910
Facsimile 401-942-4918
amedici@medicisciacca.com

CERTIFICATION

I, hereby, certify that I electronically filed and served a copy of the within on Stephen Dambruch, Assistant United States Attorney on the 2nd day of September, 2008.

/s/ Albert E. Medici, Jr., Esq.